**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DERRICKA-MICHELLE MCDANIEL,<br><br>*Plaintiff*,<br><br>v.<br><br>AMERICAN COMMUNITY DEVELOPERS, INC.; and THE CARSWELL GROUP, INC. d/b/a INDEPENDENT MANAGEMENT SERVICES,<br><br>*Defendants*. | Case No. 25-CV-2693-EFM |

**MEMORANDUM AND ORDER**

Before the Court is a Motion to Dismiss from Defendants American Community Developers, Inc. and The Carswell Group, Inc. d/b/a Independent Management Services (Doc. 53).[1] In their Motion, Defendants argue that pro se Plaintiff Derrika-Michelle McDaniel's Second Amended Complaint ("SAC") containing claims under the Fair Housing Act ("FHA") and Kansas law should be partially dismissed under Fed. R. Civ. P. 12(b)(6). For the reasons explained below, the Court grants in part and denies in part Defendant's Motion.

[1] Defendant Gateway Plaza 2023 LLC also brought this Motion but has since been dismissed from this case.

## I. Factual and Procedural Background[2]

Plaintiff suffers from lymphedema, neuropathy, and benign paroxysmal positional vertigo, as well as impairments from breast cancer treatment. Plaintiff's household also includes a minor child that was diagnosed with asthma in October 2024.

In March 2024, Plaintiff moved into Gateway Plaza Townhomes Unit 444. Plaintiff notified Defendants of her disabilities and provided proof of disability income. That same month, Plaintiff lost gas service and suffered hot water and heating issues (the "March Sequence"). Plaintiff made several maintenance requests—including timely restoration of services and written updates on repair status—but was met with hostility and intimidation.

From April 2024 through May 2025, Plaintiff also experienced sewage backups and ceiling leaks. Plaintiff observed moisture in the walls and floor and suspected mold was present. Plaintiff reported the mold to maintenance. In April 2025, a worker documented these conditions by taking photographs of the mold. Maintenance staff members were unable to find the photos that were taken or identify who took them. Defendants' staff dismissed Plaintiff's mold claims, stating that "everyone claims they have mold." In May 2025, a maintenance worker used bleach and a rag to wipe down a mold-affected area of the wall. Plaintiff requested guidance on vacating during the disturbance of the mold but received nothing.

Around May 22, 2025, Defendants told Plaintiff she would need to relocate because of unresolved sewage issues in her unit. Plaintiff selected a new unit, 20-1413, and moved in between May and June 2025. Leaks and water damage were present in the new unit. In September 2025, Plaintiff began reaching out to state and federal housing agencies for assistance. On October 2, 2025, the issues in Plaintiff's new unit culminated with a leak involving yellow water near the

[2] The facts in this section are taken from Plaintiff's Second Amended Complaint unless otherwise cited.

bathtub. Plaintiff became sick after this leak. Within the same month, Plaintiff received callbacks from several agencies she had called. Plaintiff then sent notices to Defendants seeking reasonable disability accommodations, including qualified evaluation and testing for moisture and mold; continued pest mitigation; written repair schedules; and temporary relocation during repairs likely to create airborne contaminants.

By the end of October, after state housing agencies were involved, a maintenance worker investigated the October 2 leak. He claimed there was no active leak at that time. Defendants sent a representative that intimidated Plaintiff, and they sent a new lease addendum that, if not signed, would result in her eviction. Defendants also requested that Plaintiff stop communicating with government housing agencies. On October 27, 2025, Defendants delivered a Notice of Infraction, claiming Plaintiff had made false maintenance reports regarding the October 2 leak. On November 24, 2025, Plaintiff filed her initial complaint in this case, which she later amended by filing the SAC.

Plaintiff brings several claims, three of which are relevant to the present Motion. In Count II, Plaintiff claims that Defendants failed to make reasonable accommodations as required by 42 U.S.C. § 3604(f)(3). Two of the requested accommodations underlying Count II include a qualified evaluation and targeted testing of potential mold, and temporary relocation during remedial work. In Count III, Plaintiff raises a FHA retaliation claim under 42 U.S.C. § 3617. Plaintiff alleges she was intimidated and threatened after engaging in protected activity during the March Sequence and later in October 2025. In Count IV, Plaintiff brings a landlord anti-retaliation claim under K.S.A. 58-2572. Plaintiff claims that Defendants decreased service after she filed complaints and sought help from housing agencies after the March Sequence.

In response, Defendants filed this Motion to Dismiss on March 20, 2026.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[6] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[9]

---

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678–79.

[8] *See id.* at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[10] A pro se litigant is entitled to a liberal construction of her pleadings.[11] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with the pleading requirements."[12] However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[13]

## III. Analysis

Defendants' Motion seeks to dismiss portions of Counts III and II, and Count IV in its entirety under Rule 12(b)(6). The Court addresses each Count in the same order as the Motion.

### A. Count III: FHA Interference and Retaliation Claim

To set out a prima facie case for a 42 U.S.C. § 3617 retaliation claim, a plaintiff must allege:

> (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate.[14]

Defendants only contest Count III as it relates to the March Sequence. Defendants argue that Plaintiff does not plausibly allege element (2)—that she engaged in an FHA protected activity during the March Sequence. Plaintiff contends that her requested accommodations during the March Sequence are FHA protected activity.

---

[10] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[11] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [the plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13] *Id.*

[14] *Hatfield v. Cottages on 78th Cmty. Ass'n*, 2022 WL 2452379, at *8 (10th Cir. July 6, 2022).

To be protected under the FHA, a requested accommodation must be reasonable and necessary.[15] An accommodation is necessary when, without it, the disabled person is unable to take advantage of the same housing opportunity as a non-disabled person because of their disability.[16] But the accommodation must be linked to the disability; it must ameliorate an effect of the disability preventing the disabled person from taking advantage of a housing opportunity—including use and enjoyment of the dwelling—available to a non-disabled person.[17]

Here, Plaintiff pleads no facts showing she made a disability-linked request regarding the March Sequence. The only requests Plaintiff made were for "timely restoration of essential services and clear written information regarding repair status and expected completion so Plaintiff could safely plan for her household." There is nothing alleged to show how either accommodation would ameliorate an effect of a disability—Plaintiff's own or that of the minor child—preventing Plaintiff from taking advantage of a housing opportunity available to a non-disabled person. Plaintiff alleges that her requests are disability-linked but does so in a conclusory fashion. The Court does not accept conclusions or "formulaic recitation[s] of the elements of a cause of action."[18] In other words, merely calling something disability-linked does not make it so.

Because Plaintiff fails to sufficiently plead that she requested a necessary accommodation during the March Sequence, she fails to sufficiently plead she was exercising her fair housing rights. Plaintiff has thus not made a prima facie showing for a § 3617 retaliation claim. Therefore, the portion of Count III regarding the March Sequence is dismissed.

---

[15] 42 U.S.C. § 3604(f)(3)(B).

[16] *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012).

[17] *Id.* at 924; *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1185 (D. Colo. 2016).

[18] *Iqbal*, 556 U.S. at 678; *see also Barrera v. Mid Am. Mgmt.*, 557 F. App'x. 743, 746 (10th Cir. 2014) (dismissing FHA discrimination claim for "fail[ing] to draw [the court's] attention to any specific factual allegations").

## B. Count II: FHA Failure to Make Reasonable Accommodations Claim

Like a FHA retaliation claim, a FHA failure to make a reasonable accommodation claim requires that the requested accommodation be necessary.[19] Defendants argue that two of Plaintiff's requested accommodations underlying Count II are unreasonable and unnecessary: (1) the qualified evaluation and targeted testing accommodation request, and (2) the temporary relocation accommodation request. Plaintiff counters that the requested accommodations are reasonable, necessary, and sufficiently pleaded. The Court addresses each requested accommodation in turn.

### *1. Qualified Evaluation and Targeted Testing Accommodation*

Defendants argue that Plaintiff's request for a qualified evaluation and targeted testing is both unnecessary and unreasonable. Plaintiff alleges that this accommodation is necessary because she is "medically vulnerable to environmental contaminants and infection risk."

By itself, claiming medical vulnerability is too conclusory to push Plaintiff's allegation from conceivable to plausible.[20] Plaintiff claims disabilities of lymphedema, neuropathy, and benign paroxysmal positional vertigo, but provides nothing on how those create medical vulnerability when exposed to the mold and other airborne contaminants that she sought to be professionally evaluated and tested for. She also fails to provide any facts supporting her need for professional environmental evaluation as opposed to the standard protocols provided to Defendants' other tenants. Plaintiff does not need to provide a medical treatise in her SAC, but she does need to provide enough to connect the dots of plausibility. Plaintiff thus fails to sufficiently plead that the qualified evaluation and targeted testing accommodation was necessary.

---

[19] *Cinnamon Hills*, 685 F.3d at 923–24.

[20] *Iqbal*, 556 U.S. at 678 (stating "labels and conclusions" are not sufficient).

In her Response, Plaintiff also briefly mentions the minor child's asthma, arguing that she sufficiently pleads that the requested accommodations were necessary to afford equal use and enjoyment due to the minor child's breathing impairment. But the allegations contained in Count II itself focus on "Plaintiff's documented impairments and medical vulnerability," not those of the minor child. And her allegations concerning the minor child similarly lack pleaded facts supporting the need for professional environmental evaluation as opposed to the standard protocols provided to Defendants' other tenants.

The allegations in the SAC are not sufficient to establish that the evaluation and testing accommodation was necessary to afford Plaintiff equal housing opportunities. Therefore, the evaluation and testing accommodation claim underlying Count II is dismissed.

*2. Temporary Relocation Accommodation*

Defendants next assert that Plaintiff's temporary relocation accommodation request during remediation and repair work was unnecessary and unreasonable. Importantly, an accommodation is necessary if it "ensure[s] the disabled receive the *same* housing opportunities as everybody else, [but] it does not require *more* or *better* opportunities."[21]

Here, this accommodation would not place Plaintiff on equal ground as a non-disabled person in a similar situation. To be sure, when repair work is being done on a unit, any tenant's use is affected. But that effect is generally the same for disabled and non-disabled tenants alike. And Plaintiff provides nothing to demonstrate that her or the minor child's disabilities require temporary relocation over the opportunity to voluntarily relocate as afforded to Defendants' other tenants. Plaintiff fails to allege that she is missing an opportunity that non-disabled tenants enjoy.

[21] *Cinnamon Hills*, 685 F.3d at 923.

The allegations in the SAC are not sufficient to establish that the temporary relocation accommodation request was necessary to give Plaintiff the same housing opportunities as a non-disabled tenant. Therefore, the temporary relocation accommodation request underlying Count II is dismissed.

**C. Count IV: State Law Anti-Retaliation Claim**

Finally, Defendants seek to dismiss Plaintiff's state law anti-retaliation claim regarding the March Sequence, arguing the claim is deficient under K.S.A. 58-2572. Plaintiff counters that the claim is sufficiently alleged.

To maintain an action under K.S.A. 58-2572, Plaintiff must show that the landlord retaliated against Plaintiff by decreasing services after Plaintiff either (1) complained to a government housing agency about a health or safety violation, or (2) "has complained to the landlord of a violation under K.S.A. 58-2553."[22] Under K.S.A. 58-2553, a landlord must, in part, "maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating and air-conditioning appliances . . . supplied or required to be supplied by such landlord."[23]

Here, Plaintiff does not allege that she contacted a government housing agency until September 2025, over a year after the March Sequence. However, Plaintiff made service requests regarding the events to her landlord, implicating K.S.A. 58-2553. Defendants attempt to distinguish a request for maintenance from a complaint alleging a landlord's failure of a statutory duty. But K.S.A. 58-2553 does not create a password that tenants must utter to invoke the statute's protection. "[E]ven if the tenant were simply to describe the situation, the landlord would certainly

---

[22] K.S.A. § 58-2572(a)(1)–(2).

[23] K.S.A. § 58-2553(a)(3).

understand that the tenant is making a complaint about the habitability of the apartment unit."[24] The difference between complaining about lack of hot water and complaining about a breach of landlord's duty to maintain the condition of plumbing seems tenuous, at best. Plaintiff thus sufficiently alleges that a complaint was made to her landlord about matters implicating K.S.A. 58-2553, and that Defendants retaliated by decreasing services. Therefore, Count IV is sufficiently pleaded and survives Defendants' Motion.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 53) is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

Dated this 16th day of November, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

[24] *Atain Specialty Ins. Co. v. Eagle's Pointe, LLC*, 757 F. Supp. 3d 1233, 1239 (D. Kan. 2024).